FILED

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

APR 1 5 2011
APR 15, 2011
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| GALE A. MOE, | ) | |
| | ) | |
| Plaintiff | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No |
| | ) | |
| ALEXANDER LUMBER CO., | ) | |
| | ) | |
| Defendant. | ) | |

1:11-cv-02544
Judge Milton I. Shadur
Magistrate Judge Susan E. Cox

## COMPLAINT

### I. JURISDICTION AND VENUE

1.     The Court has jurisdiction of the case under Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended (hereafter "Title VII"), 42 U.S.C. §2000e-5 et seq., under the Equal Pay Act of 1963, as amended, 29 U.S.C. §206 et seq., and the Court has supplemental jurisdiction over Plaintiff's cause of action arising under Illinois state law pursuant to 28 U.S.C. §1367.

2.     Venue properly lies in this judicial District since Plaintiff worked for Defendant Alexander Lumber Co. in Aurora, Kane County, Illinois and since the cause of action against Defendant arose here.

### II. PARTIES

3.     Plaintiff Gale A. Moe (hereinafter "Plaintiff") is a citizen of the United States, a resident of West Chicago, Kane County, Illinois, and a former employee of Defendant Alexander Lumber Co.

1

4.     Defendant Alexander Lumber Co. (hereinafter "Defendant") is a corporation which is incorporated in Illinois, has its corporate offices in Aurora, Kane County, Illinois, and is an employer within the meaning of 42 U.S.C. §2000e(b).

### III. ADMINISTRATIVE PROCEDURE

5.     Within 180 days of the occurrence of the acts set forth herein, Plaintiff filed charges of employment discrimination against the defendant, a copy of which is attached hereto as Exhibit A. It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The Plaintiff has no reason to believe that this policy was not followed in this case.

6.     On January 18, 2011, a "Notice of Right to Sue" was issued from the District Office of the Equal Employment Opportunity Commission, a copy of which is attached hereto as Exhibit B, entitling her to institute a civil action in the appropriate Federal District Court within 90 days of the date of receipt of the notice.

### IV. FACTS CENTRAL TO PLAINTIFF'S CLAIMS

7.     At all times pertinent hereto, the Defendant utilized an Executive Committee to function as its Chief Executive Officer.

8.     On or about August 9, 2007, Plaintiff became the Vice President Finance for Defendant and reported to the full Executive Committee.

9.     In August, 2007 or thereabout, Defendant hired a female employee to implement accounting software and afterwards assume the position of Controller.

10.     In the spring of 2008 or thereabout, the female employee mentioned in paragraph 9 was diagnosed with a life-threatening medical condition that limited her ability to utilize her skills and she was unsure whether she would need a medical leave of absence.

2

11.     In the summer of 2008 or thereabout, Plaintiff recommended that Defendant hire a male employee to replace, if necessary, the employee mentioned in paragraph 9.

12.     Prior to hiring the male employee, Plaintiff informed the Executive Committee that there would be a significant disparity between the male employee's salary and the female employee's salary.

13.     Prior to hiring the male employee, Plaintiff also informed the Executive Committee that if the female employee was able to continue in her current position, the disparity in salaries would have to be addressed.

14.     In the summer of 2008 or thereabout, with the permission of the Executive Committee, Plaintiff hired the male employee mentioned in paragraph 11.

15.     The female employee mentioned in paragraph 9 was able to continue working and became the de facto Controller of the Accounting Department.  The male employee mentioned in paragraph 11 continued to work as the backup for the female employee.

16.     In February of 2009 or thereabout, a member of the Executive Committee informed Plaintiff that she was to report to the Executive Vice President, a member of the Executive Committee, rather than directly to the full Executive Committee.

17.     In the spring of 2009 or thereabout, Plaintiff met with the Executive Vice President and addressed the disparity in salaries between the male and female employees mentioned above, specifically stating that if not corrected, the female employee had a potential EEOC claim.

18.     During the summer of 2009 or thereabout, Plaintiff again met with the Executive Vice President to discuss Plaintiff's opposition to the disparity in income and her good faith reasonable belief that the female employee had a potential EEOC claim.

3

19.     During the summer of 2009 or thereabout, Plaintiff met with the HR Director to discuss Plaintiff's opposition to the disparity in income and her good faith reasonable belief that the female employee had a potential EEOC claim.

20.     As of August 18, 2009 or thereabout, Defendant refused to address Plaintiff's complaint concerning the salaries between the male and the female employee stated above.

21.     During the summer of 2009 or thereabout, an employee who reported directly to Plaintiff complained about a male employee who was hired at a substantially higher hourly rate than a female employee in the identical position at the same location.

22.     During the summer of 2009 or thereabout, Plaintiff reported the disparity in income to the HR Director and stated her opposition to the unequal treatment.

23.     As of August 18, 2009 or thereabout, Defendant refused to address Plaintiff's opposition to the unequal treatment between the hourly employees in paragraph 21 above.

24.     In the fall of 2008 or thereabout, Plaintiff reported to the Executive Committee regarding some concerns with the state of Defendant's accounts receivable and the manner in which the Credit Department operated.

25.     In February 2009 or thereabout, the Executive Vice President hired a new employee in the Credit Department. A short time later the employee became the new Credit Manager.

26.     From February through August 2009 or thereabout, the Credit Manager reported to Plaintiff several concerns regarding the Credit Department and accounts receivables, including the filing of complaints with the Illinois Attorney General's Office and the Missouri Attorney General's Office, filing of inaccurate and false mechanic's liens, and intentional improper application of title company funds.

4

27.     On or about July 24, 2009, the Credit Manager informed Plaintiff that a customer's attorney wrote Defendant about Defendant violating the Illinois Statutes by unlawfully clouding title and alleging that numerous customers of Defendant have experienced similar misconduct by Defendant.

28.     Whenever the Credit Manager reported these activities to Plaintiff, Plaintiff instructed the Credit Manager that she was opposed to these activities, that the activities needed to be corrected as soon as possible and that new policies needed to be implemented to ensure compliance with the laws of the State of Illinois.

29.     Whenever the Credit Manager reported these activities to Plaintiff, Plaintiff would complain to the Executive Vice President and insisted that Defendant comply with the laws of the State of Illinois.

30.     On or about August 7, 2009, the Executive Vice President was out of the office when the Credit Manager reported to Plaintiff that one of Defendant's managers wanted to engage in activity that Plaintiff believed to be fraudulent.

31.     The activity referred to in paragraph 30 included Defendant's customer reporting to a title company on a new project "extra money for" Defendant "to be applied to past due" amounts on a different project.

32.     The Credit Manager informed Plaintiff that he had denied credit to the customer in paragraph 31 and that the Executive Vice President overruled the Credit Manager's decision.

33.     Plaintiff instructed the Credit Manager that she opposed the activity and told the Credit Manager not to engage in or approve any fraudulent activity and that she would defend his actions contravening the instructions of the Executive Vice President.

5

34.     Plaintiff discussed the issue with the Vice President Corporate Development who informed Plaintiff that the same activity occurred frequently in the district for which the Executive Vice President had been responsible.

35.     Plaintiff informed the Vice President of Corporate Development that fraudulent activity could not be tolerated and, unless stopped, Plaintiff would take the issue to the next level.

36.     On or about August 8, 2009, Plaintiff reported the situation to the HR Director and told him that fraudulent activity could not be tolerated and that Plaintiff was concerned about retaliation against the Credit Manager for reporting the activity that Plaintiff in good faith reasonably believed to be fraudulent.

37.     August 18, 2009 was the first opportunity when Plaintiff and the Executive Vice President could meet to discuss the actions in paragraphs 30-36 that Plaintiff in good faith reasonable believed to be fraudulent.

38.     On or about August 18, 2009, Plaintiff was informed that her position was being eliminated, effectively immediately.

39.     On or about August 18, 2009, the Executive Vice President and an Executive Committee member terminated Plaintiff's employment.

40.     During the time of Plaintiff's employment, Defendant had a Severance Pay and Administration Policy and the Policy in effect at the time of Plaintiff's termination is attached hereto as Exhibit C and incorporated by reference as if fully set forth herein.

41.     Defendant's consistent custom and practice has been to pay severance to employees pursuant to its Severance Pay and Administration Policy.

6

42.     According to Defendant's Severance Policy, upon job elimination a Vice President receives 26 weeks of severance pay plus an additional two weeks for an employee age 40 years and over.

43.     At the time of Plaintiff's termination, she was over 40 years old.

44.     Defendant has never paid Plaintiff any severance pay.

45.     Plaintiff's last salary was $101,400.00 annually.

## V. STATEMENT OF CLAIMS

### COUNT I:  TITLE VII RETALIATORY DISCHARGE

46.     Plaintiff adopts and incorporates by reference paragraphs 1-45 above.

47.     Title VII, 42 U.S.C. § 2000e-3, prohibits employers covered thereby from taking reprisal against an employee for complaining about practices which the employee reasonably and in good faith believes are discriminatory.

48.     During her employment and particularly in the summer of 2009, Plaintiff engaged in protected activity by opposing employment practices which she in good faith reasonably believed were discriminatory.

49.     Defendant retaliated against Plaintiff because of said opposition.

50.     By discharging Plaintiff and refusing to pay severance, Defendant committed unlawful reprisal against her in violation of Title VII, §2000e-3.

51.     Defendant's wrongful and malicious actions in discharging Plaintiff and failure to pay her severance caused her considerable financial injury and great mental distress.

### COUNT II:  EQUAL PAY ACT RETALIATORY DISCHARGE

52.     Plaintiff adopts and incorporates by reference paragraphs 1-51 above.

53.     The Equal Pay Act, 29 U.S.C. §215(a), prohibits employers covered thereby from taking reprisal against an employee for complaining about practices which the employee reasonably and in good faith believes are discriminatory.

54.     During her employment and particularly in the summer of 2009, Plaintiff engaged in protected activity by opposing employment practices which she in good faith reasonably believed were in violation of the Equal Pay Act.

55.     Defendant retaliated against Plaintiff because of said opposition.

56.     By discharging Plaintiff and refusing to pay severance, Defendant committed unlawful reprisal against her in violation of the Equal Pay Act, 29 U.S.C. §215(a).

57.     Defendant's wrongful and malicious actions in discharging Plaintiff and failure to pay her severance caused her considerable financial injury and great mental distress

## COUNT III: PUBLIC POLICY

58.     Plaintiff adopts and incorporates by reference paragraphs 1-57 above.

59.     Illinois law, 815 ILCS §505, makes it unlawful for businesses to use or employ "any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact with intent that others rely upon the concealment, suppression or omission of such material fact."

60.     Illinois law, 720 ILCS §5/32-13, makes it unlawful to intentionally record documents that cloud the title to land "knowing that the theory upon which the purported cloud on title is based is not recognized as a legitimate legal theory."

61.     Illinois law, 720 ILCS §5/31-2, makes it unlawful for a person to make "a false statement, material to the issue or point in question, which he does not believe to be true" where "by law such oath or affirmation is required."

8

62.     Illinois law, 770 ILCS §60/5, requires the contractor to provide a sworn statement of the amount due for materials.

63.     Illinois case law makes it unlawful to make a false and malicious publication, either oral or written, of words disparaging a person's title to property.

64.     Said statutes and case law express a clear mandate of public policy against fraud, perjury, unlawful clouding of title and slander of title.

65.     Plaintiff in good faith reasonably believed that Defendant's conduct was in violation of the laws of the State of Illinois.

66.     Illinois law makes an officer a participant and personally liable if she acquiesces in tortuous acts and does not take steps to prevent tortuous acts.

67.     Had Plaintiff acquiesced in the activities outlined above or had Plaintiff failed to take steps to prevent the activities outlined above, she would have put herself in jeopardy of committing crimes and committing tortuous acts under the aforementioned laws.

68.     By terminating Plaintiff and refusing to pay her severance because she refused to acquiesce in Defendant's potentially illegal and tortuous behavior or because she took steps to prevent potentially illegal and tortuous behavior, Defendant committed the tort of wrongful discharge and injured Plaintiff.

69.     Defendant's wrongful and malicious actions in discharging Plaintiff and failure to pay her severance caused her considerable financial injury and great mental distress.

## COUNT IV:  ILLINOIS WHISTLEBLOWER ACT

70.     Plaintiff adopts and incorporates by reference paragraphs 1-69 above.

71.     Illinois law, 740 ILCS §174/20, makes it unlawful for an employer to retaliate against an employee "for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation."

72.     Plaintiff in good faith reasonably believed that Defendant's conduct was in violation of the laws of the State of Illinois.

73.     Illinois law makes an officer a participant and personally liable if she acquiesces in tortuous acts and does not take steps to prevent tortuous acts.

74.     Had Plaintiff acquiesced in the activities outlined above or had Plaintiff failed to take steps to prevent the activities outlined above, she would have put herself in jeopardy of violating the laws of the State of Illinois.

75.     By terminating Plaintiff and refusing to pay her severance because she refused to acquiesce in Defendant's activities outlined above, Defendant committed wrongful retaliation against her in violation of the Whistleblower Act.

76.     Defendant's wrongful and malicious actions in discharging Plaintiff and failure to pay her severance caused her considerable financial injury and great mental distress.

## VI. REMEDIES

77.     WHEREFORE, Plaintiff respectfully requests that the Court issue a judgment granting her the following relief:

      a.      Reinstatement to a position with Defendant at the same salary and status as the one she would have held absent Defendant's unlawful retaliation against her.

      b.      Compensatory damages, including without limitation frontpay or backpay for the period since Plaintiff's unlawful discharge until the reinstatement period in (a) above;

c.      Punitive damages;

d.      Prejudgment and postjudgment interest thereon;

e.      An injunction precluding similar unlawful conduct against Plaintiff or
others similarly situated;

f.      Reasonable attorney's fees and costs including expert witness fees; and

g.      Such other and further relief as the Court deems just and proper.

## VII. JURY TRIAL DEMAND

78.     Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981(a)(c), provides
Plaintiff with the right to a jury trial on her Title VII allegations.

79.     Plaintiff requests a jury trial on all issues of fact and damages arising herein.

Respectfully submitted,

*Gale A. Moe*

Gale A. Moe
4 N 278 Kaelin Rd.
West Chicago, IL  60185
(630) 231-5797

Dated: _4/15/11_

11

Exhibit A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | | ☐ FEPA | |
| | | ☒ EEOC | 440-2010-01624 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Gale A. Moe | (630) 231-5797 | 02-04-1959 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 4n278 Kaelin Road, West Chicago, IL 60185 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ALEXANDER LUMBER CO. | 201 - 500 | (630) 844-5123 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| P O BOX 831, Aurora, Illinois 60507 | | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN | Earliest          Latest |
| ☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION | 08-18-2009 |
| ☒ OTHER EPA | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on April 16, 2003. My most recent position was V. P. of Finance. During my employment I engaged in protected activity. On August 18, 2009, I was discharged and denied my severance pay.

I believe I have been retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe I have been retaliated against for engaging in protected activity, in violation of the Equal Pay Act of 1963, as amended.

I further believe a class of females has been discriminated against because of their sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe a class of females has been discriminated against, in violation of the Equal Pay Act of 1963, as amended.

JAN 1 2 2010

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Jan 12, 2010          _Gale A. Moe_ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

*Exhibit B*

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Gale A. Moe<br>4N278 Kaelin Road<br>West Chicago, IL 60185<br><br>CERTIFIED MAIL 7010 3090 0001 5505 2206 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2010-01624 | Gregory T. Mucha,<br>Investigator | (312) 869-8135 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*John P. Rowe* wcm

**John P. Rowe,
District Director**

1/18/2011
*(Date Mailed)*

cc: **ALEXANDER LUMBER CO.**

*Exhibit C*

| SUBJECT: HUMAN RESOURCES PROCEDURES | POLICY NUMBER: 1.1 |
|---|---|
| | EFFECTIVE DATE: 10/1/2008 |
| POLICY: SEVERANCE PAY ADMINISTRATION POLICY | PAGE: 1 OF 3 |

### Policy Summary

This severance benefit plan is for managers, salaried and hourly employees. It applies when an employee's employment is terminated because of economic conditions, job elimination, organization changes, or other circumstances determined by Alexander Lumber Co. and not otherwise excluded below.

### Severance Plan

Except as provided below, regular employees who involuntarily terminate employment due to economic conditions, job elimination, organizational changes, or other circumstances determined by ALCO, are eligible to receive severance payments if they:

1. are non-union employees who are regularly employed at least 32 hours per week; and
2. sign an agreement releasing ALCO and its subsidiaries from any and all claims and liabilities related to employment with ALCO (i.e. the "Severance Agreement").

Certain circumstances will prevent covered employees from receiving severance benefits under this policy. These include, but are not limited to:

1. Resignation or voluntary retirement;
2. Discharge for gross misconduct as outlined in the Employee Handbook;
3. Disability where one becomes eligible for benefits under ALCO's Long-Term Disability Plan;
4. Refusal of an offer of other employment with ALCO or any of its affiliates or subsidiaries at a comparable level, which does not require relocation or a decrease in pay. Relocation may be required if the distance from the employee's home to his new place of employment would be 35 miles greater than the distance from his home to his former place of employment;
5. Sale of ALCO, or part thereof, if the new owner offers employment;
6. Failure to sign the Severance Agreement in a timely manner;
7. Temporary layoff of less than 90 days;
8. Acceptance of an offer of employment with a Company with whom ALCO or any of its affiliates or subsidiaries has an outsourcing arrangement which results in the elimination of the employee's job and the outsourcing of some or all of the employee's duties.

The specific payments are based on one week of regular wages.

1. Salaried employees' wages are determined by one-half of their bi-weekly salary amount.
2. Hourly employee's wages are determined by their regular weekly schedule, including any scheduled overtime.
3. Sales and commission-eligible employee are determined by one week of base pay and 1/52 of the total amount of commissions received during the past 12 months.

### Location Closing Severance Benefit

| If You Are A: | You Will Receive Severance Payment Of: |
| --- | --- |
| Hourly, salaried, or commission employees | One week of pay for each full year* of service up to a maximum of twelve (12) weeks. |
| Yard Manager, or Location Manager | A minimum of four (4) weeks of severance pay, OR one week of pay for each full year* of service up to a maximum of twenty (20) weeks. |
| District Manager, Director or Department Head | A minimum of twelve (12) weeks of severance pay, OR two weeks of pay for each full year* of service up to a maximum of twenty-four (24) weeks. |
| Vice President | Twenty-six weeks of severance pay. |

*A full year of service is defined as each 12-month period from the participant's employment date through the date of termination. There is no "rounding-up" for partial years of service. Employees with less than one year of service are not eligible for severance.

Employees age 40 and older may be eligible for an additional two weeks of severance.

Rehired employees will receive severance benefits based on their most recent and continuous hire date.

### Human Resource Procedures
Severance-eligible employees will receive personalized copies of the following documents.

1. Letter of Instruction regarding severance documents;
2. Severance Agreement;
3. Separation Benefits Overview;
4. Older Workers Benefits Protection Act Documents (if the participant is age 40 and over); and
5. Other applicable benefits continuation documents for example; 401(k) Savings Plan Tax information, Life Insurance policy conversion information.

Participants in severance benefits will be given the appropriate time to review and sign all documents and will be instructed to consult with an attorney before returning the documents to the Human Resources Department. The HR department will hold signed documents for seven calendar days before executing the provisions within the severance agreement.

Severance payments to participants will not include payroll deductions-contributions for health care premiums, COBRA payments, or 401(k) Savings Plan. Severance payments will be made with "live" payroll checks. Direct deposit is not available for severance paychecks.